223 F.3d 150 (3rd Cir. 2000)
 *KAREN L. SUTER, the Commissioner of Banking and Insurance of the State of New Jersey, as Liquidator of Integrity Insurance Company
v.
MUNICH REINSURANCE COMPANY, Appellant
 NO. 99-5611
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued November 18, 1999
Filed August 7, 2000
 
 On Appeal From the United States District Court For the District of New Jersey (D.C. Civil Action No. 99-cv-00757), District Judge: Honorable Joseph A. Greenaway, Jr.[Copyrighted Material Omitted]
 David M. Spector (Argued) Hopkins & Sutter Three First National Plaza, Suite 4200 Chicago, IL 60602 and Donald A. Klein Winne, Banta, Rizzi, Hetherington & Basralian Court Plaza North 25 Main Street P.O. Box 647 Hackensack, NJ 07602, Attorneys for Appellant
 Thomas S. Novak (Argued) Sills, Cummis, Radin, Tischman, Epstein & Gross One Riverfront Plaza Newark, NJ 97102, Attorney for Appellee
 Debra J. Hall Anthony J. Mormino Matthew T. Wulf Reinsurance Association of America 1301 Pennsylvania Avenue, N.W. # 900 Washington, D.C. 20007, Attorneys for Amicus Curiae Reinsurance Association of America
 BEFORE: ALITO, BARRY and STAPLETON, Circuit Judges
 OPINION FOR THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 Appellee LaVecchia (hereinafter "the Liquidator"), the Liquidator of Integrity Insurance Co. (hereinafter "Integrity"), commenced this adversary proceeding in the Superior Court of New Jersey alleging that Appellant Munich Reinsurance Co. (hereinafter "Munich Re") breached certain reinsurance treaties. She sought damages and declaratory relief. Because the treaties include arbitration clauses governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter "the Convention"), Munich Re removed the action to the United States District Court for the District of New Jersey pursuant to 9 U.S.C. S 205.
 
 
 2
 Munich Re then moved in the District Court for an order compelling arbitration and staying the proceedings pending arbitration. The Liquidator moved to remand to the state court on three grounds: (1) that the "Service of Suit" clause contained in each of the reinsurance treaties waived Munich Re's right to remove; (2) that the Convention and the Federal Arbitration Act (FAA) are reverse preempted by the New Jersey Liquidation Act under the McCarran-Ferguson Act, 15 U.S.C. S 1012; and (3) that Munich Re's extensive involvement in litigation before the Liquidation Court precluded removal.
 
 
 3
 The motions were referred to a Magistrate Judge, who issued a Report and Recommendation advising that the Liquidator's motion to remand be granted on the ground that the service of suit clause operated as a waiver of Munich Re's removal rights. The Magistrate Judge did not reach the other arguments.
 
 
 4
 The District Court adopted the Report and Recommendation of the Magistrate Judge as the Opinion of the Court, and remanded the action to the Superior Court of New Jersey without ruling on the motions to compel arbitration and to stay proceedings pending arbitration. Munich Re filed timely notice of appeal. This Court has appellate jurisdiction because an order remanding on the grounds that a forum selection clause in the parties' contract has waived the defendant's removal rights is a collateral order that is treated as final for purposes of appeal. See Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1211 (3d Cir. 1991). We will reverse.
 
 I.
 
 5
 Munich Re is a reinsurance company organized and existing under the laws of the Federal Republic of Germany. Integrity was a stock property and casualty insurance company organized under the laws of the State of New Jersey. During the period from 1978 through 1985, Munich Re entered into certain "quota share" and "excess of loss" reinsurance treaties with Integrity, whereby Munich Re agreed to reinsure Integrity's liability under certain policies of excess and umbrella liability insurance issued by Integrity (hereinafter "the Umbrella Policies"). Each reinsurance treaty contains a service of suit clause that substantially provides:
 
 
 6
 that in the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Company, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.
 
 
 7
 (A. 51, 66, 86, 113, 141, 164, 189). Each of the treaties also contains an arbitration clause that substantially provides that:
 
 
 8
 If any dispute or difference of opinion shall arise with reference to the interpretation of this Agreement or the rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by the Company, one to be chosen by the Reinsurer, and the third to be chosen by the two arbitrators so chosen within 30 days of their appointment.
 
 
 9
 (A. 52, 67, 87, 114, 142, 164, 190).
 
 
 10
 In 1986, delinquency proceedings were instituted against Integrity. In 1987, the Superior Court of New Jersey (hereinafter "the Liquidation Court") declared Integrity insolvent, placed it in liquidation pursuant to the New Jersey Liquidation Act, N.J. Stat. Ann. S 17:30C-1 et seq., and appointed the New Jersey Commissioner of Insurance and her successors in office as its Liquidator. Pursuant to the Liquidation Court's Order and the Liquidation Act, the Liquidator was directed to liquidate Integrity's liabilities, marshal its assets, and wind up its business and affairs. The Liquidation Court's Order requires the Liquidator to file a Notice of Determination (NOD) recommending allowance or disallowance for each Proof of Claim filed, and provides that absent timely objection, the recommended allowance or disallowance shall constitute a final judgment. The Liquidator asserts that she has issued various NODs that allow claims for indemnification of losses and payment of defense expenses incurred with respect to third-party claims filed by various policyholders under the Umbrella Policies, and that these NODs have become final judgments. She further asserts that numerous claims for indemnification and defense expenses filed by policyholders under the Umbrella Policies remain unresolved.
 
 
 11
 In June 1996, the Liquidator filed a motion with the Liquidation Court for court approval of her proposed Final Dividend Plan (FDP), which provides that contingent claims against Integrity would be estimated and allowed where appropriate, reinsurance on the claims would come due, and the Liquidator would pay a final dividend and close the Estate in three to five years instead of the ten to twenty years it would otherwise take for all of Integrity's liabilities to become liquidated. Munich Re was active in opposing the FDP. The Liquidator asserts that among other things, Munich Re contended that the Umbrella Policies do not provide coverage for defense expenses where the underlying coverage is exhausted.
 
 
 12
 Commencing December 1996, the Liquidator billed Munich Re $6.8 million on allowed claims, of which $2.8 million is on account of disputed defense expenses. The Liquidator asserts that Munich Re has refused to pay not only the $2.8 million dollars in disputed defense expenses, but also the $4 million on undisputed allowed claims, "apparently on the basis that this amount should be set off against prior payments it made on account of Disputed Defense Expenses which, in hindsight, Munich now concludes it should not have made." (A. 250). Therefore, the Liquidator filed this lawsuit against Munich Re in the Liquidation Court seeking a declaratory judgment that the Umbrella Policies include coverage for the disputed defense expenses and declaring that Munich Re's reinsurance obligation extends to disputed defense expenses allowed by the Liquidator under the reinsured Umbrella Policies. She also sought damages for Munich Re's refusal to pay.
 
 II.
 
 13
 The initial issue for resolution is whether the District Court erred in holding that the service of suit clause operated as a waiver of Munich Re's right to remove under the Convention Act. This is an issue of first impression for us. We have on three prior occasions, however, considered whether similar service of suit clauses waived other rights: Patten Sec. Corp. v. Diamond Greyhound & Genetics, 819 F.2d 400 (3rd Cir. 1987), concerning waiver of the right to compel arbitration, Foster v. Chesapeake Ins. Co., 933 F.2d 1207 (3d Cir. 1991), concerning waiver of the right to remove on the basis of diversity of citizenship, and In re Texas Eastern Transmissions Corp., 15 F.3d 1230 (3d Cir. 1994), concerning waiver of the right to remove under the Foreign Sovereign Immunities Act (FSIA). In Patten and Texas Eastern, we held that the federal policy preference for arbitration and for assuring foreign sovereigns access to a federal forum mandated that no waiver be found in the absence of clear and unambiguous language requiring one. In both cases, we concluded that similar service of suit clauses were ambiguous with respect to the claimed waiver. In Foster, on the other hand, we found no presumption against waiver appropriate when the claimed waiver was of the right to remove on diversity grounds.
 
 
 14
 We will briefly discuss the Convention Act and then turn to a more detailed review of these cases. Our ultimate objective will be to determine whether waiver of the right to remove under the Convention Act more closely resembles the right to remove under the FSIA or the right to remove under 28 U.S.C. S 1441(a) on the basis of diversity.
 
 A.
 
 15
 The removal provision of the Convention Act provides that:
 
 
 16
 Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.
 
 
 17
 9 U.S.C. S 205.
 
 
 18
 The purpose of the Convention Act was "to secure for United States citizens predictable enforcement by foreign governments of certain arbitral contracts and awards made in this and other signatory nations." McDermott Int'l, Inc. v. Lloyds Underwriters, 944 F.2d 1199, 1207 (5th Cir. 1991) (citing 21 U.S.T. 2517, T.I.A.S. 6997); accord S. Rep. No. 91-702, at 3 (1970) (explaining that the Convention "will serve the best interests of Americans doing business abroad by encouraging them to submit their commercial disputes to impartial arbitration for awards which can be enforced in both U.S. and foreign courts"). "To gain rights under the Convention, though, Congress had to guarantee enforcement of arbitral contracts and awards made pursuant to the Convention in United States courts." McDermott Int'l, Inc., 944 F.2d at 1207; accord Convention Art. XIV, reprinted after 9 U.S.C. S 201 ("A Contracting State shall not be entitled to avail itself of the present Convention against other Contracting States except to the extent that it is itself bound to apply the Convention.").
 
 
 19
 The Supreme Court has stated that "[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974); see also S. Rep. No. 91-702, at 8 ("[T]he proposed system of implementation through the U.S. district courts will assist the uniform and efficient enforcement of arbitration agreements and awards in foreign commerce."). The Supreme Court also has recognized that:
 
 
 20
 the delegates to the Convention voiced frequent concern that courts of signatory countries in which an agreement to arbitrate is sought to be enforced should not be permitted to decline enforcement of such agreements on the basis of parochial views of their desirability or in a manner that would diminish the mutually binding nature of the agreements.
 
 
 21
 Scherk, 417 U.S. at 520 n.15. Indeed, the Convention Act "demonstrates the firm commitment of the Congress to the elimination of vestiges of judicial reluctance to enforce arbitration agreements, at least in the international context." McCreary Tire & Rubber Co. v. Ceat, 501 F.2d 1032, 1037 (3d Cir. 1974); cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.14 (1985) (explaining that the FAA was "designed to overcome an anachronistic judicial hostility to agreements to arbitrate").
 
 
 22
 Finally, the Supreme Court has indicated that there are foreign policy considerations underlying the Convention, explaining that:
 
 
 23
 concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement [to arbitrate under the Convention] even assuming that a contrary result would be forthcoming in a domestic context.
 
 
 24
 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629 (1985).
 
 B.
 
 25
 In Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc., 819 F.2d 400, 405-07 (3d Cir. 1987), this Court explained that arbitration is a federally favored forum, and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver." Id. at 407. In contrast, we noted that contractual rights to select a forum do not enjoy such federal favor, and that "[i]n fact, a forum selection clause `should be unenforceable if enforcement would contravene a strong public policy of the forum in which the suit is brought.' " Id. (quoting The Bremem v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1971)). Given these policy considerations, we found that the language of the forum selection clause was "at least ambiguous," noting that "[c]onspicuously absent from the forum selection clause . . . is any reference to arbitration whatsoever."[1] Id.
 
 Therefore, we found that:
 
 26
 [b]y agreeing to submit to the jurisdiction of the State and Federal Courts of New Jersey, [the plaintiff] knew it was waiving its right to attack the maintenance of personal jurisdiction over it . . . . It cannot be said that [the plaintiff] also knew that it was waiving its right to the contractual remedy of arbitration.
 
 
 27
 Id. In this way, both the forum selection clause and the arbitration provision could be given effect: because arbitration awards are not self-enforcing, the forum selection clause could be read as dictating "the location of any action to enforce the award." Id.
 
 C.
 
 28
 In Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1216-18 (3d Cir. 1991), this Court determined the effect of a "forum selection clause" in a reinsurance agreement almost identical to the clause at issue here. It provided that:
 
 
 29
 [i]n the event that [the reinsurer] . . . fails to pay any amount claimed due hereunder, the [reinsurer], at the request of the Company, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction; and all matters arising hereunder shall be determined in accordance with the law and practice of such court.
 
 
 30
 Id. at 1216. We held that this provision waived the defendant's right to remove on diversity of citizenship grounds, reasoning that "by consenting to `submit' to `any court' of competent jurisdiction `at the request of the Company,' and to comply with all requirements necessary to give `such court' jurisdiction, [the defendant] agreed to go to, and stay in, the forum chosen by [the plaintiff]." Id. at 1216-17. We found our holding to be further supported by the parties' agreement that disputes were to "be determined in accordance with the law and practice of such court" and that the defendant would "abide by the final decision of such court." Id. We explained that removal would violate this agreement, because removal prevents the court from rendering a final decision, and, while the substantive law applied by a federal court in a diversity action would still be the law of the state court, the "practice" of the federal courts would govern the matter. Id.
 
 
 31
 The Foster Court rejected the argument that contractual waivers of S 1441(a) removal rights must be "clear and unequivocal." Id. at 1217 n.15. Noting that federal courts "have construed the removal statutes strictly and, on the whole, against the right of removal," we reasoned that a "clear and unequivocal" standard "fails to consider the constrictive rather than expansive nature of the right of removal, in addition to serving no meritorious policy of litigation." Id. We found that a "clear and convincing" standard was "so stringent as to be contrary to the right of parties to contract in advance regarding where they will litigate." Id. Instead, we stated that a court "simply should determine contractual waiver of the right to remove using the same benchmarks of construction and, if applicable, interpretation as it employs in resolving all preliminary contractual questions." Id.
 
 
 32
 In the course of our opinion in Foster, we took note of In re Delta Re, 900 F.2d 890 (6th Cir. 1990), in which the United States Court of Appeals for the Sixth Circuit held that contractual waivers of removal rights under the FSIA must be "clear and unequivocal." Based on that view, the Delta Re Court found that a service of suit clause similar to the one before us did not operate as a waiver. See id. Notably, we distinguished In re Delta Re on the ground that it was "primarily driven by considerations peculiar to the FSIA," which considerations were inapposite in the context of a waiver of diversity jurisdiction. Id.
 
 
 33
 We also distinguished our earlier decision in Patten as dependent on the fact that because arbitration is favored, "forum selection clauses must be scrutinized carefully so that `if doubts arise as to whether th[e] dispute is arbitrable or not, such doubts must be resolved in favor of arbitrability.' " Id. at 1218 n.16. However, wefound that "[n]o such consideration of preferred forum is implicated in remanding [a diversity] case, as there is no reason for a preference for a federal over a state court in this action." Id.
 
 D.
 
 34
 In In re Texas Eastern Transmission Corp., 15 F.3d 1230 (3d Cir. 1994), this Court held that given the structure and purpose of the FSIA, a service of suit clause identical in substance to the one in the instant case did not waive of the defendant's removal rights.[2] See id. at 1244. We found that in enacting the FSIA, "Congress sought to create a new division in addition to federal question and diversity jurisdiction for federal subject matter jurisdiction." Id. at 1239. We explained:
 
 
 35
 It is further evident that enactment of the FSIA was in response to unique policy considerations touching on the international relations of the United States, considerations not apropos to the federal diversity statute. Indeed, the Supreme Court has acknowledged Congress' deliberate intent to circumvent much of the potential for interference with the federal government's foreign relations caused by lack of uniformity and local bias in civil caselaw involving foreign states as defendants by channeling private actions against foreign sovereigns away from the state forums and into federal court to be adjudicated in nonjury trials.
 
 
 36
 Id. Thus, we found that the FSIA establishes the United States District Courts as the "preferred forum" for suits against foreign states, and that "the policy of `jealous restriction' which has characterized application of the diversity statute is not operative in the FSIA context." Id. Instead, we believed that a liberal approach to jurisdiction was most conducive to achieving "the FSIA's paramount objectives of keeping the federal courts open to foreign states, and indeed of affirmatively encouraging private actions against foreign states to be adjudicated in federal court." Id. at 1241.
 
 
 37
 As evidence of these "paramount objectives," this Court relied primarily on the jurisdictional provisions of the FSIA itself: "Unlike the diversity statute, S 1330 grants original jurisdiction in the district court without regard to amount in controversy in order to facilitate this policy. Similarly, S 1441(d) confers an absolute right of removal on the defendant foreign state." Id. In addition to the absence of an amount-in-controversy requirement, S 1441(d) greatly liberalizes the time requirements for removal, allowing removal "at any time for cause shown," and it eliminates the plaintiff 's right to trial by jury. See In re Delta Re Ins. Co., 900 F.2d 890, 893 (6th Cir. 1990) (quoting 28 U.S.C. S 1441(d)).
 
 
 38
 Turning to the question of whether the service of suit clause waived the defendant's removal rights, this Court distinguished Foster as lacking the policy imperatives of the FSIA. See In re Texas Eastern Transmission Corp. , 15 F.3d at 1243. Instead, we looked to the Sixth Circuit's decision in In re Delta Re, 900 F.2d 890 (6th Cir. 1990), and its reliance on the particular purposes of the FSIA as a basis for finding that a service of suit clause did not operate as a waiver. See In re Texas Eastern Transmission Corp., 15 F.3d at 1243. We found that the purposes of the FSIA "are best served by a uniform body of law developed in federal court" and, in particular, by the unqualified right to remove granted by S 1441(d). Id. Therefore,"[g]iven Congress' unusually strong preference for adjudication of claims against foreign states in the federal court system, we h[eld] that it would contravene strong public policy to permit a less than absolutely unequivocal contractual provision to divest a federal district court of FSIA subject matter jurisdiction." Id. We then found that "the district court's power to remand based on breach of a contractual forum selection clause is doubtful where . . . the clause may be construed as nothing more than a waiver of the right to contest personal jurisdiction." Id. This reasoning reflects that of the Sixth Circuit's:
 
 
 39
 When the clause in question is read, it appears that the primary purpose of the clause is to ensure that the reinsurer will submit to the jurisdiction of a court within the United States. Although we have referred to it as a "forum selection clause," the contract itself does not use that language. It would be more appropriate to describe it as a "submit to the jurisdiction of a court within the United States" clause. Given that many retrocessionaires are foreign corporations, the concern about in personam jurisdiction is logical and understandable. The right of removal, however, in no way interferes with in personam jurisdiction.
 
 
 40
 In re Delta Re Ins. Co., 900 F.2d at 893.
 
 E.
 
 41
 We conclude that the situation before us more closely resembles that in Texas Eastern and, accordingly, hold that there can be no waiver of a right to remove under the Convention Act in the absence of clear and unambiguous language requiring such a waiver. Like the FSIA, the Convention Act and the policy choices that support it establish a strong and clear preference for a federal forum, a policy that will be best served by resolving any ambiguity in contract language against waiver.[3]
 
 
 42
 There are strong similarities between the removal provisions under the Convention Act and the FSIA. Both statutes permit removal based on foreign domicile of a defendant, regardless of the amount in controversy or the questions raised in the case. Compare 9 U.S.C. SS 203, 205 with 28 U.S.C. S 1441(d). Moreover, both statutes greatly extend the time limitations on removal. Compare 9 U.S.C. S 205 with 28 U.S.C. S 1441(d)."Under section 1441(d), a defendant may remove `at any time for cause shown,' and under section 205, a defendant may remove `at any time before trial.' Other cases may be removed only within 30 days after the defendant receives a pleading." McDermott Int'l, Inc. v. Lloyds Underwriters, 944 F.2d 1199, 1212 (5th Cir. 1991) (quoting 28 U.S.C. S 1441(d) and 9 U.S.C. S 205). Thus, the same structural factors that led this Court in Texas Eastern to adopt an express-waiver rule under the FSIA are present in the Convention Act's removal statute. Indeed, S 205 is, if anything, even broader than S 1441(d), since the defendant may remove at any time before trial without having to show cause.[4] Compare 9 U.S.C. S 205 with 28 U.S.C. S 1441(d).
 
 
 43
 Moreover, an express waiver requirement will serve the various purposes of the Convention Act by ensuring U.S. citizens predictable enforcement of arbitral contracts and awards by foreign governments, unifying the standards by which international arbitration agreements are observed and enforced, and avoiding the vestiges of judicial hostility to arbitration. A "clear and unambiguous" waiver standard minimizes the danger that other countries could rely on the Convention's reciprocity clause to depart from the Convention. Other countries would be permitted to reciprocally abrogate only to the extent that the United States does, and thus could decline to enforce the Convention only when the American citizen invoking its protection had expressly waived his or her Convention rights.
 
 
 44
 Furthermore, even assuming that state courts are required to abide by the Convention, an express waiver rule will promote the Convention's goal of uniformity, because "disunity is directly proportional to the number of authorities speaking on any subject . . . . [F]ederal-district-court Convention decisions are appealable of right to a court of appeals, ensuring uniformity of federal decisions at least on a multi-state basis." McDermott Int'l, Inc., 944 F.2d at 1212. Indeed, a similar interest in uniformity of jurisprudence under the FSIA was one of the reasons why this Court found that the FSIA established the federal courts as a preferred forum in In re Texas Eastern Transmission Corp., 15 F.3d 1230, 1239, 1243 (3d Cir. 1994). Moreover, given that the pro-arbitration policies reflected in the Convention Act represented a significant departure from the common law, the concern about uniformity is particularly compelling.
 
 
 45
 In sum, four of the "peculiar" considerations noted by this Court in Foster as a basis for treating waivers of removal rights under the FSIA differently than waivers of removal rights under the diversity statute are equally present under the Convention Act: (1) the broad removal statute; (2) the purpose of avoiding local bias and prejudice possibly inherent in state court proceedings; (2) the "drastic departure" from a previously long-standing rule; and (4) the interest in uniformity. See Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1217 n.15 (3d Cir. 1991).
 
 
 46
 Our adoption of the "clear and unambiguous language" standard is supported not only by our analysis in Texas Eastern and Foster, but also by the only other Court of Appeals to address this issue. In McDermott Int'l v. Lloyds Underwriters, 944 F.2d 1199 (5th Cir. 1991), the United States Court of Appeals for the Fifth Circuit found that an express-waiver rule served the Convention Act's goals of reciprocity, uniformity, and speed and was consistent with circuit precedent. See id. at 1209-13.
 
 F.
 
 47
 Applying the "clear and unambiguous language" standard to this case, we find the service of suit clause ambiguous and, accordingly, hold that the Reinsurance Agreement does not waive Munich Re's right to remove under the Convention Act. Applying a "clear and ambiguous" standard to a substantially identical forum selection clause in Texas Eastern, we held that "the clause may be construed as nothing more than a waiver of the right to contest personal jurisdiction." In re Texas Eastern Transmission Corp., 15 F.3d at 1243. The service of suit clause does not explicitly waive removal rights, and a defendant may remove a case "after submitting to the jurisdiction of [the state] courts and complying with all necessary requirements to give [the state] courts power over the suit," as required by the service of suit clause. McDermott Int'l, Inc., 944 F.2d at 1205-06. Because after removal there would be no final decision to abide by, the defendant would not violate its agreement to abide by the final decision of the state court. See id. Finally, "[a]ll matters would be determined in accordance with the practice and law of the court chosen by [the plaintiff] in the sense that all state courts follow the removal law established by Congress." Id.
 
 G.
 
 48
 We are not unmindful of the Liquidator's contention that our decision in Texas Eastern was primarily the result of a concern regarding foreign relations, which, she contends, is not implicated in the same way where the defendant is merely a foreign commercial enterprise rather than a foreign state or state-owned commercial enterprise. The similarity between the statutes and the broad removal provision of the Convention Act in particular indicate otherwise, however. Furthermore, the Supreme Court has indicated that there are foreign policy considerations underlying the Convention as well. As we have earlier noted, the Court in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629 (1985), found that "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require[d]" enforcement of the Convention.
 
 
 49
 In the absence of legislative guidance, it is inappropriate for courts interpreting statutes to pick and choose based on the court's assessment of the relative importance of the interests served. See Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 263-64 (1975). Here, Congress enacted similar statutes with similar purposes, and this Court will not interpret them differently based on our own essentially legislative judgment as to the relative importance of the foreign relations implications of sovereign immunity and the enforcement of arbitration agreements with foreign commercial enterprises.
 
 III.
 
 50
 The Liquidator urges as an alternative ground for affirmance that the Convention Act is reverse preempted by the New Jersey Liquidation Act. The McCarran-Ferguson Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. S 1012(b). Under S 1012, state laws reverse preempt federal laws if (1) the state statute was enacted "for the purpose of regulating the business of insurance," (2) the federal statute does not "specifically relate to the business of insurance," and (3) the federal statute would "invalidate, impair, or supersede" the state statute. E.g., U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 501 (1993) (quoting 15 U.S.C. S 1012(b)). In the instant case, there is no contention that either the Convention Act or the FAA "specifically relate to the business of insurance." Thus the only issues are whether these statutes as applied in the instant case invalidate, impair or supercede a New Jersey statute that was enacted for the purpose of regulating the business of insurance.
 
 
 51
 The Liquidator points to several statutory provisions that she argues would be impaired by allowing Munich Re to remove to federal court and to compel arbitration. The New Jersey Liquidation Act (hereinafter "the Liquidation Act") provides that "[t]he Superior Court shall have original jurisdiction of delinquency proceedings under this act." N.J. Stat. Ann. S 17:30C-2. It further provides that "[d]elinquency proceedings pursuant to this act shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer, and no court shall entertain a petition for the commencement of such proceedings, or any other similar proceedings, unless the same has been instituted by the commissioner." N.J. Stat. Ann. S 17:30C-3. Finally, the Liquidation Act provides that:
 
 
 52
 [t]he court may, at any time during a proceeding under this act, issue such other injunctions or orders as may be deemed necessary to prevent interference with the commissioner or the proceeding, or waste of assets of the insurer, or the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer or against its assets or any part thereof.
 
 
 53
 N.J. Stat. Ann. S 17:30C-5.
 
 
 54
 The Liquidator argues that these statutory provisions were enacted for the purpose of regulating the business of insurance, and that allowing removal or arbitration of the Liquidator's claims against Munich Re would impair or supercede them. For purposes of this decision, we will assume that these provisions were enacted for the purpose of regulating the business of insurance, but we find no impairment.
 
 
 55
 The Liquidator's argument that the arbitration of this controversy and the enforcement of any award by the District Court will impair New Jersey's Liquidation Act ignores several obvious facts. This is not a delinquency proceeding or a proceeding similar to one. Nor is it a suit by a party seeking access to assets of the insurer's estate. Moreover, even if it were such, the Superior Court would have express authority to enjoin the plaintiff from proceeding in the event that it were to interfere with the proceedings before it. What this proceeding is is a suit instituted by the Liquidator against a reinsurer to enforce contract rights for an insolvent insurer, which, if meritorious, will benefit the insurer's estate. Accordingly, we fail to perceive any potential for interference with the Liquidation Act proceedings before the Superior Court.
 
 
 56
 Moreover, we find no potential friction between the Liquidation Act and having this controversy decided by an arbitrator, in the event arbitration is ultimately ordered. The Liquidator appears to share this view when she wishes to arbitrate. See Arkwright Mut. Ins. Co. v. Integrity Ins. Co., No. C-70-95 at 3 (N.J. Super. Ct., Chancery Div. July 31, 1995) (granting the motion of Integrity's Liquidator to compel arbitration and observing that the Court did not have exclusive jurisdiction over disputes between the Liquidator and reinsurers). We likewise find no inconsistency between the Act's conferral of "original jurisdiction" on the Superior Court and finding removal jurisdiction in other courts to adjudicate claims asserted by the Liquidator.
 
 
 57
 It is true, as the Liquidator stresses, that if the District Court or an arbitrator should decide the reinsurance agreement does not cover the disputed expenses, the estate will be smaller than if that issue was resolved in the Liquidator's favor. But the mere fact that policyholders may receive less money does not impair the operation of any provision of New Jersey's Liquidation Act.
 
 
 58
 We note that the Fifth Circuit has interpreted the Oklahoma Liquidation Act and concluded that the statute gave the state court "the power to decide all issues relating to disposition of an insolvent insurance company's assets, including whether any given property is part of the insolvent estate in the first place." Munich Amer. Reins. Co. v. Crawford, 141 F.3d 585, 590-91, 593 (5th Cir. 1998). Thus, the Court held that the FAA was reverse preempted by the state Liquidation Act. See id. at 595-96. Munich, however, is distinguishable in two critical ways. First, it involved a suit brought by reinsurer against the estate asserting claims to settlement monies. See id. at 596. Second, the Oklahoma statute at issue vested the state court with "exclusive original jurisdiction." Id. at 590 (emphasis added). Munich thus provides no insight into the instant case, which involves a suit by the Liquidator and New Jersey's Liquidation Act.
 
 
 59
 We hold that application of the Convention Act to this suit does not impair the New Jersey Liquidation Act. Accordingly, the Liquidation Act does not reverse preempt the Convention Act under the McCarran-Ferguson Act, and there is no alternative ground for affirming the district court's order remanding the action to state court.
 
 IV.
 
 60
 Finally, we note that the Liquidator at times appears to argue that Munich Re has consented to the jurisdiction of the Liquidation Court by obtaining extensive discovery on the issue of defense expenses under the Umbrella Policies. Munich Re contests that the documents in question were obtained through discovery, contending that they were obtained through a routine audit in its capacity as reinsurer. Regardless, while participation in litigation and discovery may well be relevant to the question of whether Munich Re has waived its right to arbitrate, it is irrelevant to the question of removal under the Convention Act, which provides that a defendant may remove "at any time before trial" and imposes no requirement that the defendant show cause for the delay. 9 U.S.C. S 205.
 
 V.
 
 61
 The order of the District Court remanding the case to the New Jersey State Court will be reversed and the case will be remanded to the District Court for consideration of Munich Re's motion to compel arbitration and for other proceedings consistent with this opinion.
 
 
 
 NOTES:
 
 
 *
 (Substituted pursuant to F.R.A.P. 43(c))
 
 
 [1]
 The forum selection clause read: "This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of New Jersey, and the Company hereby consents and will submit to the jurisdiction of the courts of the State of New Jersey and of any federal court sitting in the State of New Jersey with respect to controversies arising under this Agreement." Patten Sec. Corp., 819 F.2d at 407 n.3.
 
 
 [2]
 The service of suit clause provided that "Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." In re Texas Eastern Transmission Corp, 15 F.3d at 1242 n.15.
 
 
 [3]
 Our holding that the policy and structure of the Convention Act establish the federal courts as a preferred forum for resolving disputes under the Convention Act is further supported by the fact that arbitration in general is a favored forum. See, e.g., Patten Sec. Corp., 819 F.2d at 407. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver." Id. at 407. While the instant case does not directly concern the "scope of arbitrable issues," it does concern who will determine the scope of arbitrable issues. Given the historical hostility of state courts to arbitration, it can be argued that doubts concerning waiver of removal rights under the Convention Act should be resolved in favor of the federal forum. Such an argument is particularly persuasive in the context of arbitration agreements under the Convention, as the Supreme Court has indicated that international arbitration agreements are even more favored than domestic ones and that therefore courts must sometimes enforce them even where "a contrary result would be forthcoming in the domestic context." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629 (1985).
 
 
 [4]
 The Liquidator argues that S 205 is actually more restrictive than S 1441(d), noting that S 1441(d) not only extends the time limits for removal, but also extinguishes the plaintiff 's right to a jury trial. If a case falls under the Convention, however, a jury trial is simply not available because the case is arbitrable, and it is the court, not a jury, that determines arbitrability. Thus, there is no need to extinguish the right to a jury trial in a Convention case.
 The Liquidator also argues that removal under S 1441(d) is broader because she contends that it is not subject to additional procedural requirements, whereas S 205 provides that "[t]he procedure for the removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal." 9 U.S.C. S 205. However, while S 1441(d) does not expressly state that other procedural requirements apply, its provision to the effect that "the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown" suggests that other procedural requirements do in fact apply. Thus, there is no basis for concluding that removal rights under S 205 are narrower than under S 1441(d).
 
 
 ALITO, Circuit Judge, dissenting:
 
 62
 I respectfully dissent because the unique considerations governing removal by a Foreign Sovereign under the Foreign Sovereign Immunities Act (FSIA) do not apply to removal by a corporation under the Convention Act. In Foster v. Chesapeake Ins. Co., 933 F.2d 1207 (3d Cir. 1987), we held that forum selection clauses must be interpreted using normal principles of contractual interpretation and that they must therefore be interpreted as waivers of the right to remove, except in cases where a sovereign wishes to remove pursuant to the provisions of the FSIA. See id. at 1217-19. In In Re Texas Eastern Transmission Corp., 15 F.3d. 1230 (3d Cir. 1993), the Court concluded that the "unique policy considerations" that are involved in sovereign litigation and the "peculiar" provisions of the FSIA implied a congressional intent that courts depart from their normal practice and construe forum selection clauses in favor of a sovereign's right to remove pursuant to the Act. Thus, we held that forum selection clauses do not waive a sovereign's right to remove pursuant to 28 U.S.C. S 1441(d) (the FSIA's removal provisions) unless there is "clear and unequivocal" language to that effect. See id. at 1243. The majority argues today that the policy considerations of the FSIA are not so unique after all, and its removal provisions not "peculiarly" broad. Indeed, the majority holds that the purposes and the structure of the Convention Act are so similar to the purposes and structure of the FSIA that they implicitly command us to construe forum selection clauses in favor of a defendant's right to remove pursuant to the Convention Act as well. I cannot agree.
 
 
 63
 Foster laid down a general rule governing contractual waivers of removal rights. It held that parties could waive removal rights and that such waivers need not be clear and unequivocal. See id. at 1218 n.15. We explained at length why the doctrine of "clear and unequivocal waiver"-- developed by courts in cases involving non-contractual waivers--cannot sensibly be imported into cases involving contractual waivers. See id. In so doing, we specifically criticized courts that had failed to recognize that different considerations applied in cases of contractual and non-contractual waiver. See id.[1] Furthermore, we concluded that it would be unfair to bring the "clear and unequivocal" standard of non-contractual waiver into cases involving contractual waivers. See id.[2]
 
 
 64
 Two years later, in Texas Eastern, the Court held that certain qualities peculiar to the FSIA required waivers of a sovereign's removal rights under the FSIA to be clear and unequivocal. The Court inferred this from two qualities that were peculiar to the FSIA. First, the FSIA implicated "unique policy considerations related to international relations." Texas Eastern, 15 F.3d at 1241. Second, the FSIA granted removal rights so peculiarly broad that they implied congressional intent "to give the defendant foreign state the unqualified right to remove any civil action brought against it in state court." Id. at 1243. In order to serve these ends, the Court held that it would have to construe forum selection clauses in favor of a sovereign's right to remove. Thus, the Court cited with approval the Ninth Circuit's holding that "generally applicable rules of removal do not apply to the uniquely expansive S 1441(d)." Id. (quoting Teledyne, Inc. v. Kone Corp. , 892 F.2d 1404, 1409 (9th Cir. 1989)).
 
 
 65
 The majority today finds that the Convention Act is similar in certain material respects to the FSIA, and that we therefore should not find waiver of the right to remove pursuant to the Convention Act unless there is clear and unequivocal language explicitly waiving the right to remove. This is not so. Although the Convention Act contains provisions that are similar in some ways to the removal provisions of the FSIA, it does not share those precise provisions that imply congressional intent to require clear and unequivocal waivers of the right to remove under the FSIA. Thus, despite superficial similarities, a corporation does not have an "unqualified" right to remove pursuant to the Convention Act analogous to a sovereign's right to remove pursuant to the FSIA.
 
 
 66
 First, the Convention Act does not implicate the same foreign policy considerations as the FSIA. The majority asserts that "there are foreign policy considerations underlying the Convention [Act] as well." See Maj. Op. at 160. This is true, but it is beside the point. Texas Eastern makes it absolutely clear that we carve out an exception to our general rules of waiver not simply because "there are foreign policy considerations underlying" the FSIA, but because, as the opinion stated twice, there are "unique policy considerations touching on the international relations of the United States." Id. at 1239, 1243. "Unique" means, of course, "being the only one; known to exist in no other copy" or "being without a like or equal: single in kind or excellence." Webster's Third New International Dictionary 2500 (1971). The unique policy concerns that are implicated by the FSIA are the concerns that arise when the courts of one sovereign are asserting jurisdiction over another sovereign. In holding that the FSIA implicates "unique" concerns requiring the adoption of special removal rules, Foster and Texas Eastern both cite the Sixth Circuit's analysis in In re Delta Re Insurance Co., 900 F.2d 890 (6th Cir. 1990), which focuses on the unique concerns that arise because the FSIA strips sovereigns of their long-standing immunity from suit in the United States. See Texas Eastern, 15 F.3d at 1243 (same); Foster 933 F.2d at 1217 n.15 (citing Delta 900 F.2d at 894) In Foster we noted:
 
 
 67
 obviously viewing the element of foreign sovereignty of paramount importance, the court [in Delta ] concluded: "In order to provide maximum guidance for future cases involving foreign states, we hold that any claimed waiver of the right of removal stemming from contractual language must be explicit."
 
 
 68
 Foster 933 F.2d at 1217-18 n.15 (emphasis added)(quoting 900 F.2d at 894).
 
 
 69
 The Convention Act, which does not regulate the interaction of states, does not involve the "unique policy considerations" that underlie our opinion in Texas Eastern. Furthermore, the text of the Convention Act does not grant broad rights of removal that imply congressional intent "to give the defendant foreign state the unqualified right of removal." Texas Eastern, 15 F.3d at 1243. As the majority opinion freely admits, Texas Eastern identified three specific provisions that together implied a grant of an unqualified right of removal. First, the FSIA provides that there will be no amount in controversy requirement for removal under the FSIA. See 28 U.S.C. S 1441 (d); second, it provides that a sovereign can remove even after trial has commenced, see id.; and third, it automatically guarantees a bench trial. See id. As the majority also concedes, a party covered by the Convention Act is not entitled to either of these last two rights. Such a party may not remove after trial has begun (a severe "qualification" of the right to remove) and is not guaranteed a bench trial. See 9 U.S.C. S 205. Thus, even if the provisions of the Convention Act are broader than the provisions of 28 U.S.C. S 1441 (a)-(b), they are not as broad as the provisions of the FSIA, and they cannot be said to grant an "unqualified right of removal." Texas Eastern, 15 F.3d at 1243.[3]
 
 
 70
 The majority tries to paper over the crucial differences between the FSIA and the Convention Act and downplay their significance. See Maj. Op. at 158-59. It points out that one has more time to remove under the Convention Act than one would under S 1441(a)-(b). This is beside the point. In the FSIA context we depart from the generally applicable removal rules, not because the removal rights are generous, but because they are "unqualified." Since the right to remove pursuant to the Convention Act is not "unqualified," we should not depart here from the generally applicable rule.
 
 
 71
 The FSIA exception to general rules of removal cannot be extended by analogy to include removal under the Convention Act. Despite its protestations to the contrary in Section 3G, the majority has indeed based its decision on its "own essentially legislative judgment as to the relative importance of the foreign relations implications of sovereign immunity and the enforcement of arbitration agreements with foreign commercial enterprises." Maj. Op. at ___.
 
 
 72
 In addition, the rule that the majority reaches is actually quite unfair. Munich Re is a massive corporation with excellent counsel who engaged in careful negotiations with another corporation. As part of its deal, it willingly offered to litigate in any forum selected by its partner. Such a promise seems on its face to be a promise not to remove a case, and our cases make clear that it will be interpreted as such--except in cases involving removal under the FSIA. Today the majority allows this corporation to walk away from its freely entered obligation. I respectfully dissent.
 
 
 
 NOTES:
 
 
 [1]
 In particular, we criticized the Sixth Circuit's opinion in In Re Delta Re Insurance Co., 900 F.2d 890 (6th Cir. 1990) which had been cited for the proposition that, as a general rule, contractual waivers had to be "clear and unequivocal." We noted that the authorities cited in this case either "involved non-contractual litigation-based waivers or, in turn, cited non- contractual waiver cases." See Foster 933 F.2d at 1218 n.15.
 
 
 [2]
 Nevertheless, we noted that the Sixth Circuit's opinion could be read narrowly to hold that considerations "peculiar to the FSIA" require waivers to be clear and unequivocal. We refused to decide whether the FSIA provided some unique right to have forum selection clauses construed in favor of a sovereign's right to remove. Foster, 933 F.2d at 1218 n.15.
 
 
 [3]
 The majority points out that the Convention Act allows a party to remove at any time before trial without having to show cause, but the FSIA allows unconditional removal only within 30 days of the complaint. The right to remove after trial has begun for cause that is granted by the FSIA is more extraordinary than the limited extension of the time limit to remove without cause that is granted by the Convention Act. More important, this seems simply to be evidence that the enumerated removal rights granted by the two statutes are different, and perforce do not contain the same penumbrated rights.