JENNIFER W. ELROD, Circuit Judge,
with whom
JERRY E. SMITH and EMILIO M. GARZA, Circuit Judges,
join, dissenting:
Today the court concludes that an Act of Congress is not really an Act of Congress. In doing so, it holds that a non-self-executing treaty,[1] the Convention on the Recognition and Enforcement of Foreign Arbitral Awards[2] (Convention), preempts a state law. Because a non-self-executing treaty cannot itself provide a rule of decision in U.S. courts, the only candidate for a source of federal law with preemptive force under the Supremacy Clause is the statute that implements the treaty. The McCarran-Ferguson Act[3] requires that federal statutes that affect the business of insurance do so explicitly. The implementing statute does not do so, and it is therefore powerless to preempt state law. For this reason, the district court ruled correctly, and I respectfully dissent.
I.
The court errs today in what should have been an exercise in garden-variety statutory interpretation: instead of an *738 swering the question of whether the legislation implementing the Convention (the Convention Act)[4] is an “Act of Congress” within the meaning of the McCarran-Ferguson Act, the court frames its approach[5] as an inquiry into whether the Convention itself is an Act of Congress. The court no longer explicitly endorses the panel’s dubious “hybrid” holding that “the treaty followed by the implementing legislation must be considered as the sum of its parts, not piecemeal.”[6] However, the court’s failure to ask the right question at the outset inevitably leads to its incorrect conclusion-that the Convention itself, a non-self-executing treaty, preempts the Louisiana statute.[7] This holding is a doctrinal novelty of our circuit’s own creation, as there is no precedent holding that a non-self-executing treaty, in and of itself, has the power to preempt state law. The court’s trailblazing holding also creates a circuit split with the Second Circuit and goes against other circuits that have concluded that a non-self-executing treaty, even if implemented by statute, may not be applied directly in U.S. courts.
A.
The court’s effort to frame this case as a conflict between the Convention itself and Louisiana law puts the cart before the horse by failing to consider basic preemption doctrine before analyzing the McCarran-Ferguson Act. Fundamentally, this is a Supremacy Clause case. See Munich Am. Reinsurance Co. v. Crawford, 141 F.3d 585, 590 (5th Cir.1998) (“Ordinarily, federal law preempts conflicting state law by virtue of the Supremacy Clause. The McCarran-Ferguson Act reverses that effect .... ” (citation omitted)). From the perspective of the Supremacy Clause, Louisiana Revised Statute § 22:629[8] applies unless the Underwriters carry the burden to show that some specific source of federal law preempts it.[9] If the proposed preemptive law is a statute like the Con *739 vention Act, then the McCarran-Ferguson Act applies. If the proposed preemptive law is the Convention itself, then the court is correct that McCarran-Ferguson does not apply. But there is still no preemption — and the district court must be affirmed — unless the Convention is actually capable of superseding § 22:629 as a matter of Supremacy Clause law. It is not.
A crucial distinction between a self-executing treaty and a non-self-executing one is that the former, but not the latter, can provide a judicially-enforceable source of preemptive law under the Supremacy Clause. Beginning with Foster v. Neilson, 27 U.S. (1 Pet.) 253, 315 (1829), and as recently as Medellin v. Texas, 552 U.S. 491, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008), the Supreme Court has repeatedly affirmed that only self-executing treaties operate by their own force to provide a rule of decision in the courts.[10] Non-self-executing treaties, in contrast “can only be enforced pursuant to legislation to carry them into effect.” Id. at 1356 (quoting Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888)). In Whitney, the Supreme Court described the self-executing/non-self-executing distinction as follows:
A treaty is primarily a contract between two or more independent nations .... When the stipulations are not self-executing, they can only be enforced pursuant to legislation to carry them into effect, and such legislation is as much subject to modification and repeal by congress as legislation upon any other subject. If the treaty contains stipulations which are self-executing, that is, require no legislation to make them operative, to that extent they have the force and effect of a legislative enactment.
124 U.S. at 194, 8 S.Ct. 456. The Court then described the Supremacy Clause implications of self-executing treaties having equal standing with statutes.[11] Similarly in the Head-Money Cases, the Court distinguished purely international obligations flowing from non-self-executing treaty provisions from domestic obligations, recognized by the Supremacy Clause, flowing from self-executing treaty provisions.[12] In *740 Medellin, the petitioner asserted that an International Court of Justice ruling was binding in United States courts because, “by virtue of the Supremacy Clause, the treaties requiring compliance with [the ruling] are already law of the land.” 128 S.Ct. at 1356 (emphasis and internal quotation marks omitted). The Court rejected this argument because it found the treaties to be non-self-executing. Id. at 1358-61.
Therefore, treaties come in two separate and distinct types: self-executing treaties, which can undoubtedly preempt state law in a case like this, and non-self-executing treaties, which cannot. The court brushes away this key distinction, declining to hold that the Convention is self-executing, but nevertheless stating that “the Convention, an implemented treaty, rather than the Convention Act, supersedes state law.” Op. at 725 (emphasis added); see also Op. at 717-18 (“[T]he McCarran-Ferguson Act does not apply to the Convention.” (emphasis added)); Op. at 724 (“[I]t is a treaty (the Convention), not an act of Congress (the Convention Act), that we construe to supersede Louisiana law.”).
The court does not dispute that a non-self-executing treaty provision, of itself, has no legal force in domestic courts, and therefore no preemptive force, while a self-executing provision does. It concludes, however, that upon implementation by statute, a non-self-executing treaty is promoted to the Supremacy Clause status it would have enjoyed had it been self-executing. In this view, a treaty is a treaty. Under this view, a non-self-executing treaty requires an additional step to become binding, but once that step is passed — once the treaty is implemented — it is the Supremacy Clause equivalent of a self-executing treaty. The court, therefore, holds to the idea that a treaty, rather than an “Act of Congress,” causes the conflict in this case, repeatedly asking whether “the Convention” supersedes Louisiana law.
But that is wrong. The court points to no case holding that a non-self-executing treaty can supersede state law. See David Sloss, The Domestication of International Human Rights: Non-Self-Executing Declarations and Human Rights Treaties, 24 Yale J. Int’l L. 129, 149 (1999) (“[T]o the best of the author’s knowledge, no U.S. court has ever held a treaty provision to be non-self-executing and then applied it directly to decide a case.”). Furthermore, there is no argument that Foster, Medellin, or any similar case supports such a result. Simply put, implementing legislation — even if it fully implements a treaty— does not promote a non-self-executing treaty to the Supremacy Clause status it would have enjoyed had it been self-executing. As a matter of directly applicable domestic law, the non-self-executing treaty remains as inert as a provision of a model code, a source of content incorporated by reference.[13] As a source of law, the imple *741 meriting legislation is the alpha and omega of what may constitute a rule of decision in U.S. courts. For this reason, there can be no preemption in this case without construing an Act of Congress the Convention Act rather than the treaty.
B.
Untethered to the moorings of Supreme Court precedent, scholarly consensus in this area, or case law from other circuits, the court sets off on its course into uncharted Supremacy Clause waters. Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920), is the only Supreme Court holding upon which the court purports to ground its conclusion that the non-self-executing Convention is capable of preemption, and that courts should look to the treaty, rather than to the implementing legislation, to see if it is an “Act of Congress.” But Holland's holding on the treaty power’s interplay with Congress’s powers under the Necessary and Proper Clause is irrelevant to the Supremacy Clause question before this court.
What is relevant to this case is not the holding of Holland, but the manner in which it frames the conflict between an implemented treaty and state law prerogatives embodied in a Missouri statute. It is clear from the first sentence of Holland that the implementing act — not the treaty — is considered the source of the conflict. See 252 U.S. at 430-31, 40 S.Ct. 382 (“This is a bill in equity brought by the State of Missouri to prevent ... the United States from attempting to enforce the Migratory Bird Treaty Act.” (emphasis added)). The Court reasoned that the treaty was constitutional under the treaty power, and therefore the act implementing it was constitutional under the Necessary and Proper Clause. See id. at 432, 435, 40 S.Ct. 382. It accordingly held that the district court had correctly dismissed Missouri’s complaint “on the ground that the Act of Congress is constitutional.” Id. at 431, 40 S.Ct. 382. The source of preemptive power at issue was the implementing legislation, which the Court variously referred to as an “act,” id., a “statute,” id. at 432, 435, 40 S.Ct. 382, and an “act of Congress,” id. at 432, 40 S.Ct. 382. There is no contention or holding in Missouri v. Holland that a court could apply a non-self-executing treaty, implemented or not, to supersede state law.
Not only does Holland not support the conclusion that implementation by statute imbues a non-self-executing treaty with preemptive abilities; leading Supreme Court cases on the self-executing/non-self-executing distinction provide no support, either. Indeed, the court does not attempt to argue that Foster, Whitney, the Head-Money Cases, or Medellin, or any case interpreting any of them, supports the premise that the non-self-executing Convention is capable of “superceding” state law under the Supremacy Clause. Considering the unusual nature of the question (and before it overrules the district court and creates a circuit split), I would expect the en banc court to devote some attention to the relevant case law in this area. It fails to do so.
The court also ignores the consensus of legal scholars regarding the Supremacy Clause status of implemented treaties. In direct contradiction to the holding today, the commentators overwhelmingly conclude that under current (and longstanding) law, it is only the implementing statute, not the non-self-executing treaty, that can be enforced by the courts so as to be capable of preemption.[14] See, e.g., 1 Re *742 statement (Third) of the Foreign Relations Law of the United States § 111(3) cmt. h (1986) [hereinafter Restatement] (“[Strictly, it is the implementing legislation, rather than the agreement itself, that is given effect as law in the United States.”); Louis Henkin, Foreign Affairs and the United States Constitution 200 n. * (2d ed. 1996) (“Strictly, if a treaty is not self-executing it is not the treaty but the implementing legislation that is effectively ‘law of the land.’ ”); Malvina Halberstam, Alvarez-Machain II: The Supreme Court’s Reliance on the Non-Self-Executing Declaration in the Senate Resolution Giving Advice and Consent to the International Covenant on Civil and Political Rights, 1 J. Nat’l Security L. & Pol’y 89, 96 (2005) (“[I]t it is the statute implementing the treaty that is the supreme law of the land, rather than the treaty, as provided for by Article VI [the Supremacy Clause].”); Carlos Manuel Vázquez, Treaties as Law of the Land: The Supremacy Clause and the Judicial Enforcement of Treaties, 122 Harv. L.Rev. 599, 637 (2008) (“When a treaty is non-self-executing, judges apply the implementing statute, not the treaty itself.”); Jean-Marie Simon, The Alien Tort Claims Act: Justice or Show Trials?, 11 B.U. Int’l L.J. 1, 42 n. 247 (1993) (“As a technical matter, U.S. implementing legislation does not make the treaty directly applicable in U.S. courts, it only makes the implementing legislation part of U.S. law in U.S. courts, although the implementing language may [be] identical to treaty language.”); Thomas Buergenthal & Sean D. Murphy, Public International Law in a Nutshell 198-99 (4th ed. 2007) (“Non-self-executing treaties, however, require legislation to implement them in the United States. For such agreements, it is the implementing legislation, not the agreement itself, that becomes the rule of decision in U.S. courts.”); Kathleen Patchell, 10A Hawk-land UCC Series § 8:22 (“[I]f a private law convention is implemented as a non-self-executing treaty, the convention itself will not become part of U.S. domestic law. Instead, it is the legislation, if any, passed to implement the convention that becomes part of U.S. domestic law.”); Vincent G. Lvy, Note, Enforcing International Norms in the United States after Roper v. Simmons; The Case of Juvenile Offenders Sentenced to Life Without Parole, 45 Colum. J. Transnat’l L. 262, 266 n. 21 (2006) (“Indeed, the preemptive power of treaties is limited to ‘self-executing’ treaties the statutory provisions implementing those treaties that are not self-executing, rather than the treaties themselves, preempt U.S. state law.”); cf. Henkin, Foreign Affairs and the United States Constitution at 209 n.* (“Since a non-self-exeeuting treaty is not law for the courts of its own accord, any inconsistency between such a treaty and an Act of Congress is, as regards domestic law, an inconsistency between the two statutes.”).
In its quest to give the Convention new-found preemptive abilities, the court similarly disregards case law from other circuits that have concluded that non-self-executing treaties lack preemptive force in U.S. courts. Indeed, the Second Circuit has so concluded with respect to the exact same non-self-executing treaty in this case. Stephens v. Am. Int’l Ins. Co., 66 F.3d 41 (2d Cir.1995).[15] Its unanimous panel did *743 not find the issue difficult. The question presented was whether “under the Supremacy Clause the Convention supersedes the Kentucky Liquidation Act.” Id. at 45. The court only needed to note that “the Convention is not self-executing” and consider the basic doctrine of Foster in order to conclude that “[t]he Convention itself is simply inapplicable.” Id. The Third Circuit’s decision in Suter v. Munich Reinsurance Co., 223 F.3d 150 (3d Cir.2000), further confirms that the Convention is simply inapplicable as a source of preemptive law in the courts. As in Stephens, the court in Suter faced essentially the same issue we face. Although it described the reinsurance contracts at issue as “includ[ing] arbitration clauses governed by the ... Convention,” it framed the preemption issue in terms of whether there was a conflict between “the Convention Act” and an allegedly contrary New Jersey statute. See id. at 152, 160-62.[16] There was no suggestion that the Convention itself could supersede the statute.
The notion that non-self-executing treaties are inapplicable in domestic courts finds support in other circuits as well. In Hopson v. Kreps, the Ninth Circuit concluded in no uncertain terms that “[t]he issue in any legal action concerning a statute implementing a treaty is the intended meaning of the terms of the statute.” 622 F.2d 1375, 1380 (9th Cir.1980). Rather than being the star of the jurisprudential show, as the majority contends, the non-self-executing treaty takes a back seat to the implementing statute: it may be “relevant [in U.S. Courts] insofar as it may aid in the proper construction of the statute,” but it “has no independent significance in resolving such issues.”[17] See id. Likewise, when the D.C. Circuit addressed the interpretation of a non-self-executing treaty, Judge Kavanaugh noted in concurrence that “[s]trictly, it is the implementing leg *744 islation, rather than the agreement itself, that is given effect as law in the United States. That is true even when a non-self-executing agreement is ‘enacted’ by, or incorporated in, implementing legislation.” Fund for Animals, Inc. v. Kempthorne, 472 F.3d 872, 879 (D.C.Cir.2006) (Kavanaugh, J., concurring) (quoting Restatement § 111 cmt. h).
Although the court cites cases from our circuit purporting to apply the Convention rather than the Convention Act,[18] these cases stand for no such proposition. They amount to nothing more than instances of imprecise language used in contexts where the distinction was of no consequence.[19] In the typical case, the formal distinction between the Convention and the Convention Act will not matter. When courts confront an implemented, non-self-executing treaty, the implementing act has preemptive force under the Supremacy clause rendering it irrelevant whether the treaty does as well. Where the distinction is not material, it is just less cumbersome to speak of a party’s rights under a particular section of the Convention (which contains the specifics) than under the Convention Act (which merely enacts the Convention).[20] This is comparable to our occasional practice of applying the Uniform Commercial Code as if it were enforceable law, when we really mean to refer to state statutes enacting the uniform provisions. See, e.g., First United Fin. Corp. v. Specialty Oil Co., 5 F.3d 944, 946 n. 2 (5th Cir.1993) (“[Bjecause Louisiana has adopted the UCC provisions relevant herein, all sec *745 tions -will hereafter be cited to the UCC rather than to the specific Louisiana statute.”). In the instant case, however, the distinction is not merely tangential but dispositive: the McCarran-Ferguson Act applies only to Acts of Congress, not to treaties.[21]
II.
Perhaps the court today does not really mean to cut a new path through Supremacy Clause territory to endow non-self-executing treaties with heretofore undiscovered preemptive powers. But that is what it must do in order to justify framing its approach as an inquiry into whether the Convention itself is an “Act of Congress.”[22] The alternative would be a sort of legal alchemy, in which the court bestows on the Convention Act the beneficial properties of a statute (such as the power to carry an inert treaty into execution and preempt state law), but not its drawbacks (such as the need to live by rules like the McCarran-Ferguson Act that Congress has prescribed for statutes). This is plainly wrong. Because a non-self-executing treaty cannot preempt state law, the court cannot analyze the ineffectual treaty rather than the implementing legislation to determine the reverse-preemptive effects of the McCarran-Ferguson Act.
A.
Two sources of law are here in conflict. The first source of law is Louisiana Revised Statute § 22:629, which bars the use of arbitration clauses in insurance disputes.[23] The Louisiana statute would normally be subject to the ordinary rules of preemption, except that it falls within purview of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15, which bars implied federal statutory preemption of state insurance law and permits state insurance laws to reverse-preempt inconsistent federal statutes. Specifically, Congress declared in the McCarran-Ferguson Act that it intended to create a default rule preserving a state-by-state scheme for regulating insurance and providing that congressional silence on insurance regulation must not be interpreted to preempt state law. § 1011 (“Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall *746 not be construed to impose any barrier to the regulation or taxation of such business by the several States.”). The provision of the McCarran-Ferguson Act at issue in this case provides:
No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance ....
§ 1012(b) (emphasis added). With respect to “Acts of Congress,” the McCarran-Ferguson Act “impos[es] what is, in effect, a clear-statement rule that state laws enacted ‘for the purpose of regulating the business of insurance’ do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise.”[24] U.S. Dep’t of the Treasury v. Fabe, 508 U.S. 491, 507, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). Thus, at least as an initial matter, this provision of Louisiana law is protected by the McCarranFerguson Act.
The court errs on the question whether the second source of law in this case constitutes an “Act of Congress.” If it does, then like all Acts of Congress that do not “specifically relate[ ] to the business of insurance,” it is subject to reverse-preemption by state law under McCarran-Ferguson; if it is not an Act of Congress but rather some other source of federal law, like a self-executing treaty, then McCarran-Ferguson does not apply, and the Louisiana law would be preempted by straightforward application of the Supremacy Clause.
The Convention, as a non-self-exeeuting treaty, cannot itself provide the rule of decision here, so the Convention Act must be the second source of law.[25] This was *747 the conclusion reached by the Second Circuit in Stephens. Stephens v. Am. Int’l Ins. Co., 66 F.3d 41 (2d Cir.1995). In determining whether Louisiana state law was preempted under the McCarran-Ferguson Act, the court looked to the implementing statute, not the treaty. Unlike the court today, the Stephens court found that “[t]he Convention itself ... simply inapplicable in this instance” as the implementing legislation was the federal law of consequence. Id. Likewise, this court should have looked to the statute, rather than the treaty, to determine if Louisiana law had been preempted by an “Act of Congress” as required by McCarran-Ferguson.
B.
The court justifies its decision to look to the Convention rather than the Convention Act on the ground that the Convention Act implements the Convention largely by reference, as opposed to setting out the Convention provisions within the text of the Act.[26] Op. at 724. The court proposes that “the Convention Act does not ... operate without reference to the contents of the Convention.” Id. Because a court applying the Convention Act must also consult a reference copy of the Convention to ascertain the conflict with Revised Statute § 22:629, the court argues that it is the Convention, rather than the Act, that is “construed” under the McCarran-Ferguson Act. This supposedly insulates the preemptive provisions from McCarranFerguson, which reaches only statutes, not treaties.
This argument is essentially a play on words, which wrenches the word “construe” from the verb phrase in which it appears in the statute:
No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.
15 U.S.C. § 1012(b). The relevant phrase is “construe! ] to invalidate, impair, or supersede.” Thus, “construe” does not merely mean to refer to the text for content. The plain meaning of “construe ... to supersede any law enacted by any State” is to give preemptive force, to apply the source of law in question rather than state law. Accordingly, to merely “operate with! ] reference to the contents” of the Convention — to merely have a copy handy and refer to it — is not to “construe” the Convention in the McCarran-Ferguson sense.[27]
*748 The contention that we are not truly “construing” the Convention Act because we must resort to the language of the Convention to do so is logically unsupportable and foreign to the case law. The other circuits to address this question have discussed the interaction between a non-self-executing treaty and its implementing legislation to varying degrees, depending in part on the relevance of the distinction to the case’s outcome. None have suggested that the Convention Act’s failure to cut-and-paste the language of the treaty into the statute somehow prevents the statute from being an “Act of Congress,” capable of being “construed.” See Missouri v. Holland, 252 U.S. 416, 424, 430, 431, 432, 435, 40 S.Ct. 382, 64 L.Ed. 641 (1920) (discussing the source of law at issue as an “Act of Congress,” an “act of Congress,” an “act,” and a “statute,” and addressing solely the question whether the Act of Congress preempted state law, not whether the treaty itself did); Stephens, 66 F.3d at 45 (holding “[t]he Convention itself ... simply inapplicable in this instance”); Suter v. Munich Reinsurance Co., 223 F.3d 150, 160-62 (2d Cir.2000) (analyzing the Convention Act, rather than the Convention itself, as the source of law at issue); Hopson v. Kreps, 622 F.2d 1375, 1380 (9th Cir.1980) (although it “is relevant insofar as it may aid in the proper construction of the statute,” a non-self-executing “treaty has no independent significance in resolving such issues.”).
Commentators also agree that regardless of whether one must refer to a separate treaty text, or whether instead that text is set out in the implementing statute itself, it is the statute, not the treaty, that courts apply. See, e.g., Carlos Manuel Vázquez, The Separation of Powers as a Safeguard of Nationalism, 83 Notre Dame L.Rev. 1601, 1617 (2008) (“When a court gives effect to a treaty because it is instructed to do so by a statute, it is applying the statute, not the treaty.”); Tim Wu, Treaties’ Domains, 93 Va. L.Rev. 571, 588 (2007) (“When Congress implements a treaty through a statute, the statutory regime completely replaces the treaty as a basis for direct enforcement. That is, judges do not return to the original text of the treaty as a law they can enforce directly.”).
In the end the court does not see the “operate with[ ] reference to the contents” theory all the way through. The court does not merely look to the Convention in order to fill gaps in the language of the Convention Act. Rather, the opinion makes clear that the court means to apply the Convention directly, as if it had preemptive force. For the reasons given in Part I above, it is not possible to “construe [the Convention] to supersede” anything, because the Convention is incapable of providing a rule of decision in a U.S. court. Louisiana law governs unless some applicable source of federal law can preempt. The treaty cannot do so. Therefore, the only remaining candidate is the Convention Act.
III.
Only a single statutory interpretation question remains: is the Convention Act an “Act of Congress” within the meaning of the McCarran-Ferguson Act? We can *749 answer this question by setting forth the opening words of the Act itself:
UNITED STATES STATUTES AT LARGE
91ST CONGRESS — 2ND SESSION Convening January 19, 1970
An Act
To implement the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.
Pub.L. No. 91-368, 84 Stat. 692 (1970) ( emphasis added).
This is an Act of Congress. The legislation is plainly labeled as an Act of Congress, and no ambiguity on this point is cited by the court or by the parties. “The preeminent canon of statutory interpretation requires us to ‘presume that [the] legislature says in a statute what it means and means in a statute what it says there.’” BedRoc Ltd. v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (quoting Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). “[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.” Id. (citing cases) (emphasis added). In addition, as discussed at length in Part I, the Supreme Court recognizes the implementing legislation of a non-self-executing treaty as an Act of Congress. Missouri v. Holland, 252 U.S. 416, 430, 431, 432, 435, 40 S.Ct. 382, 64 L.Ed. 641 (1920). Therefore, the court’s exercise in statutory interpretation should have ended with the plain language of the statute, and its foray into the realm of policy considerations is improper.
Because the court is convinced that the straightforward interpretation of the words “Act of Congress,” would produce an “untenable” result, the court’s analysis veers off course into a fruitless search for Congress’s true intent. As a result, the court ends up supplanting the plain meaning of the unambiguous term “Act of Congress” with a strained interpretation aimed at protecting important federal policies.
First, the court resorts to speculation about what Congress must have had in mind when it included the words “Act of Congress” in the reverse-preemption provision of the McCarran-Ferguson Act. The court concludes that “there is no apparent reason ... why Congress would have chosen to distinguish in the McCarran-Ferguson Act between treaties that are self-executing and those that are not self-executing but have been implemented.” Op. at 723. It therefore considers it “unlikely” that in passing McCarran-Ferguson, Congress “intended any future treaty implemented by an Act of Congress to be abrogated to the extent that the treaty conflicted ... with a state law regulating ... insurance if Congress’s implementing legislation did not expressly save the treaty from reverse-preemption.” Op. at 729.[28]
*750 This interpretation contradicts the plain language of the McCarran-Ferguson Act. In the Act, Congress prescribed a dear-statement rule for federal statutes affecting the business of insurance: uncertain provisions are to be construed not to preempt state insurance law. See generally U.S. Dep’t. of Treasury v. Fabe, 508 U.S. 491, 507, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). In fact, Congress explicitly determined that “the continued regulation and taxation by the several States of the business of insurance is in the public interest.” § 1011. It is possible that Congress intended this policy judgment to control the interpretation of Acts of Congress generally, whether or not they implemented treaties. It is also possible that Congress never considered whether Acts of Congress implementing treaties ought to be subject to the clear-statement rule of McCarran-Ferguson. It does not matter which, if either, of these narratives is correct. Such speculation has no place when we interpret a statute to say what it means and mean what it says. BedRoc, 541 U.S. at 183, 124 S.Ct. 1587; see also Green v. Biddle, 8 Wheat. 1, 21 U.S. 1, 89-90, 5 L.Ed. 547 (1823) (“[WJhere the words of a law, treaty, or contract, have a plain and obvious meaning, all construction, in hostility with such meaning, is excluded. This is a maxim of law, and a dictate of common sense.”). There is a lively debate in the judiciary and the legal academy over the universe of interpretive methods properly available to a court where the text of a statute is unclear, but that debate is irrelevant here. How much clearer than “No Act of Congress” can Congress be?
The court contends that reading the words “Act of Congress” to include the Convention Act is “untenable,” and states that it does “not consider it reasonable” to embrace such a reading of the statute. Op. at 723-24. Yet there is no citation to any rule of construction that would make these judgments relevant to the interpretive task, as policy-based interpretive techniques have no place in the court’s analysis where the language of the statute is clear.[29] Where the statutory text is unambiguous, “there is neither need nor warrant to look elsewhere.” Am. Trucking Ass’ns, Inc. v. ICC, 659 F.2d 452, 459 (5th Cir. Unit A Oct.1981) (emphasis added). “A court should depart from the official text of the statute and seek extrinsic aids to its meaning only i/the language is not clear or if apparent clarity of language leads to absurdity of result when applied.” Id. (emphasis added and citation omitted). *751 In light of such clear directives, the court’s approach is aberrant.
In addition to the court’s improper inquiry into what Congress intended when it wrote the unambiguous words “Act of Congress,” the court expounds for some length-indeed for an entire section-upon the federal policies protected by its interpretation. See Op. at 730-31 (“Our conclusion that referral to arbitration is proper in this case is bolstered by the congressionally sanctioned national policy favoring arbitration of international commercial agreements.”). But in light of a clearly worded statute, this factor cannot support the weight that the court’s analysis forces it to bear. Indeed, even if such policy considerations were relevant to the interpretation of an unambiguous statute, and they are not, the court’s analysis barely acknowledges the state interest that was significant enough to give rise to the rare reverse-preempting provision of the McCarran-Ferguson Act in the first place.[30]
IV.
In summary, I would follow the holding of the Second Circuit (the only circuit to have squarely decided this question) in Stephens. In a domestic court, a treaty that Congress enacts is not law itself, and in fact it is the statute that counts and the statute amounts to a standard congressional act.
I would hold that:
1. The non-self-executing Convention[31] cannot itself provide a rule of decision *752 for U.S. courts; only its implementing-legislation is capable preempting state law.
2. The Convention Act implementing the Convention is an Act of Congress that does not “specifically relate[] to the business of insurance”;
3. The McCarran-Ferguson Act provides that “No Act of Congress” preempts state law unless the Act of Congress “specifically relates to the business of insurance”;
4. The Louisiana statute is “a[] law enacted by a[] State for the purpose of regulating the business of insurance” that the Convention Act would “invalidate, impair, or supersede”;
5. The Convention Act is therefore reverse-preempted by the Louisiana statute by operation of the McCarran-Ferguson Act; and
6. Accordingly, the district court correctly ruled that no federal law prevents Louisiana Revised Statute § 22:629 from applying in this case.
% #
The court today has declined the opportunity to align itself with the Second Circuit and the Supreme Court’s jurisprudence in this area. It has muddied the waters of our statutory interpretation jurisprudence, by reasoning on an ad hoc basis from its own conception of what is “reasonable,” or “[ Jlikely” for Congress to have intended, rather than looking to what Congress said. Simultaneously, with little doctrinal discussion, it has applied a non-self-executing treaty as domestic, preemptive law in an unprecedented manner. As a result, “at least until our superiors *753 speak, we leave the state of the law in [Supremacy] Clause purgatory.” Green v. Haskell Co. Bd. of Comm’rs, 574 F.3d 1235, 1245 (10th Cir.2009) (Gorsuch, J., dissenting from denial of rehearing en banc) (citation and internal quotation marks omitted).
Respectfully, I dissent.

. The question of whether or not the treaty is self-executing is not before the court. See infra note 31.

. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. (Convention).

. 15 U.S.C. §§ 101-115.

. 9 U.S.C. §§ 201-208.

. See Op. at 718 ("[I]t is when we construe a treaty ... that the state law at issue is superseded.”); Op. at 724 ("[I]t is a treaty (the Convention), not an act of Congress (the Convention Act), that we construe to supersede Louisiana law.”); see also Op. at 722-23 ("The fact that a treaty stands on equal footing with legislation when implemented by Congress does not mean that it ceases to be a treaty and becomes an 'Act of Congress.' ” (footnote omitted)).

. Compare Safety Nat’l Cas. Corp. v. Certain Underwriters at Lloyd's London, 543 F.3d 744, 753 (5th Cir.2008), vacated and reh’g granted, 558 F.3d 599 (5th Cir.2009), with Op. at 717-18 ("[T]he McCarran-Ferguson Act does not apply to the Convention. ...” (emphasis added)); Op. at 725 ("Because here the Convention, an implemented treaty, rather than the Convention Act, supersedes state law, the McCarran-Ferguson Act’s provision that 'no Act of Congress’ shall be construed to supersede state law regulating the business of insurance is inapplicable.”).

. Despite the court’s belief that it "need not and do[es] not undertake to determine the precise or technical contours of how or whether implemented non-self-executing treaty provisions become the 'Law of the Land' under the Supremacy Clause,” Op. at 727, that is what it necessarily must do in order to justify framing its approach as an inquiry into whether the Convention itself is an "Act of Congress.” See infra Part II.

. Effective January 1, 2009, § 22:629 has been renumbered § 22:868. See La.Rev.Stat. Ann. § 22:868 (Special Pamphlet A 2009). The provision was numbered § 22:629 at all times relevant to this suit.

. See AT&T Corp. v. Public Utility Comm'n of Tex., 373 F.3d 641, 645 (5th Cir.2004) ("The burden of persuasion in preemption cases lies with the party seeking annulment of the state statute.”) (citing Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 230 (3d Cir.2001)).

. There is an argument, based on the text of the Supremacy Clause, that the Constitution should not recognize two species of treaty. After all, the clause provides that the "Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the Judges in every State shall be bound thereby.” U.S. Const. art. VI, § 2, cl. 2 (emphasis added). But this interpretation has not prevailed.

. See Whitney, 124 U.S. at 194, 8 S.Ct. 456 ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other. When the two relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but, if the two are inconsistent, the one last in date will control the other: provided, always, the stipulation of the treaty on the subject is self-executing." (emphasis added)).

. The Court stated the following regarding the distinction between international obligations and domestic obligations recognized by courts:
A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress.
*740 Edye v. Robertson (Head-Money Cases), 112 U.S. 580, 598, 5 S.Ct. 247, 28 L.Ed. 798 (1884). The Court then noted, in contrast, that self-executing treaty provisions are a proper subject of the Supremacy Clause:
But a treaty may also contain provisions ... which are capable of enforcement as between private parties in the courts of the country .... The constitution of the United States places such provisions as these in the same category as other laws of congress by its declaration [in the Supremacy Clause] that "this constitution and the laws made in pursuance thereof, and all treaties made or which shall be made under authority of the United States, shall be the supreme law of the land."
Id. at 598-99, 5 S.Ct. 247 (emphasis added).

. Of course, as a matter of international law, the United States is bound by its commitments, including those arising from non-self-executing treaties. See, e.g., Ian Brownlie, Principles of Public International Law 620 (2008) (describing the principle of pacta sunt *741 seiranda requiring nations party to a treaty to perform their obligations in good faith).

. This includes commentators who are critical of the present state of the law and those *742 who are not, both of whom are represented in the citations given.

. The court contends that Stephens "is at least in tension” with the Second Circuit’s subsequent decision in Stephens v. National Distillers & Chem. Corp., 69 F.3d 1226 (2d Cir.1995) [hereinafter National Distillers]. This is not so, as the cases are easily distinguished. As the court notes, National Distillers held that the statute at issue in the case, the Federal Sovereign Immunities Act (FSIA), *743 codified international law that was already a part of federal common law at the time Congress passed the McCarran-Ferguson Act. See id. at 1234 (“But it was not an ‘act of Congress’ that superseded [state] insurance law. International law, accepted by federal common law, had already done that before the FSIA came into being.”); see also Verlinden B.V. v. C. Bank of Nig., 461 U.S. 480, 488, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) ("For the most part, [FSIA] codifies, as a matter of federal law, the restrictive theory of sovereign immunity.”). McCarran-Ferguson was inapplicable because it would not require reverse-preemption of the identical federal common law rules that would have been in force had the FSIA never been enacted. See National Distillers, 69 F.3d at 1234. That unique circumstance is not present in this case. Furthermore, the FSIA specifies that it provides the exclusive means of suing a foreign sovereign in American courts. See 28 U.S.C. §§ 1604-1607 (foreign states are immune from the jurisdiction of American courts except as provided in §§ 1605-1607); see Republic of Austria v. Altmann, 541 U.S. 677, 691, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (FSIA is "comprehensive statute containing a 'sel of legal standards governing claims of immunity in every civil action against a foreign state (quoting Verlinden, 461 U.S. at 488, 103 S.Ct. 1962)). By contrast, the Convention Act does not contain, nor has the Supreme Court found, a similar statement of exclusivity.

. The court held there was no conflict because in fact, the New Jersey statute did not preclude arbitration (or removal to federal court) pursuant to the Convention Act. See Suter, 223 F.3d at 161 (“[W]e find no potential friction between the Liquidation Act and having this controversy decided by an arbitrator.”).

. Even the proposition that a non-self-executing treaty could be relevant as an interpretive aid to resolve ambiguities in an implementing act is contested. See, e.g., Fund for Animals, Inc. v. Kempthorne, 472 F.3d 872, 880 (D.C.Cir.2006) (Kavanaugh, J., concurring) (finding "little justification for a court to put a thumb on the scale in favor of a non-self-executing treaty when interpreting a statute” because such treaties “have no legal status in American courts.”).

. See Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902-03 (5th Cir.2005) (“It goes without saying that, upon the United States signing a treaty and Congress adopting enabling legislation, the treaty becomes the supreme law of the land.”); McDermott Int'l, Inc. v. Lloyds Underwriters of London, 120 F.3d 583, 586 (5th Cir.1997) (refusing to decide “whether the Convention preempts La. R.S. 22:629” (emphasis added)); Sedco, Inc. v. Petroleos Mexicanos Mexican Nat’l Oil Co., 767 F.2d 1140, 1145 (5th Cir.1985) (holding that if an arbitration agreement qualifies, "the Convention requires district courts to order arbitration” (emphasis added)).

. In Lim, for example, employment contracts, not insurance agreements, were at issue; the McCarran-Ferguson Act was therefore not triggered and state law was preempted by federal law — as a formal matter, by the Convention Act rather than the Convention itself, but it made no difference in that case. 404 F.3d at 900-01. The formal status of the Convention was similarly irrelevant in Sedeo, and the McCarran-Ferguson Act not triggered. 767 F.2d at 1144-45. Although McDermott involved the same Louisiana insurance statute at issue here, it did not address the Convention/Convention Act distinction because it held that the policy was not delivered in Louisiana, and thus that Louisiana's arbitration voidance clause was inapplicable. 120 F.3d at 586.

. The Restatement acknowledges the practice of referring to a non-self-executing treaty, for convenience’s sake, as applicable law when actually it is not. In fact, the Restatement does so itself. Section 111(3) states the basic rule regarding non-self-executing treaties:
Courts in the United States are bound to give effect to international law and to international agreements of the United States, except that any "non-self-executing” agreement will not be given effect as law in the absence of necessary implementation.
At first glance, this appears to suggest that a non-self-executing agreement will "be given effect as law” upon implementation. Comment h, however, makes clear this is not the case:
Under Subsection (3), strictly, it is the implementing legislation, rather than the [non-self-executing] agreement itself, that is given effect as law in the United States. That is true even when a non-self-executing agreement is "enacted” by, or incorporated in, implementing legislation.
Unlike the cases that the court cites, the present case is the rare one that requires us to be “strict” in distinguishing between the treaty and the act.

. The court cites language from the Convention Act itself indicating a “proceeding falling under the convention shall be deemed to arise under the laws and treaties of the United States,” Op. at 724 (quoting 9 U.S.C. § 203) (emphasis added), implying that Congress thought the Convention Act could apply directly. This argument does not undermine the consensus that non-self-executing treaties lack preemptive force in the courts. At most, this language could conceivably be relevant to determining whether Congress thought the treaty was self-executing. But assuming (as the court does) that it is not self-executing, Congress simply lacks the power to alter, by statute, constitutional decisions such as Foster, Whitney, and the Head-Money Cases, which indicate that non-self-executing treaties are not directly enforceable by the courts.

. Thus, it is no surprise to find the court inferring from our precedents that “implemented provisions of a non-self-executing treaty can themselves be given effect by the courts as federal law,” Op. at 727 & n. 57, concluding that “it is by reference to the Convention that we have a command — a judicially enforceable remedy — that we 'supersede' Louisiana law," Op. at 725, recognizing that “[i]mplementing legislation that does not conflict with or override a treaty does not replace or displace that treaty,” Op. at 722-23, and deciding what it means for preemptive law to have “as its source an implemented non-self-executing treaty,” Op. at 727.

. Doucet v. Dental Health Plans Mgmt. Corp., 412 So.2d 1383, 1384 (La.1982) (holding that § 22:629 bars arbitration clauses in the insurance law context).

. Congress has prescribed rules of statutory construction in other statutes as well. See, e.g., 50 U.S.C. § 1547(a) (War Powers Resolution) (imposing clear statement rule for legislation authorizing introduction of United States Armed Forces into hostilities). Furthermore, the formal treaty/statute distinction the court elides today is essential in a number of other contexts. See, e.g., 18 U.S.C. § 4001(a) (Non-Detention Act) (requiring that any "imprison[ment] or detention]” by the United States of an American citizen be effected pursuant to an "Act of Congress"; a treaty is insufficient (emphasis added)); 28 U.S.C. § 1350 (Alien Tort Statute) ("The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States,” but not an Act of Congress) (emphasis added); War Powers Resolution, 50 U.S.C. § 1547(a)(2) (stating that specific authorization for the introduction of United States Armed Forces into hostilities may not be inferred from a treaty alone, but instead requires implementing legislation); Curtis A. Bradley & Jack L. Goldsmith, Foreign Relations Law 396 (2d ed. 2006) ("It is generally accepted that treaties may not by themselves create domestic criminal liability in the United States”; statutes are required); 1 Restatement (Third) of Foreign Relations Law of the United States § 111, cmt. i (1987) [hereinafter Restatement] ("It has been commonly assumed that an international agreement [e.g., a treaty] cannot itself bring the United States into a state of war.”); Edwards v. Carter, 580 F.2d 1055, 1058 (D.C.Cir.1978) ("Thus, [by virtue of U.S. Const, art. I, § 9, cl. 7] the expenditure of funds by the United States cannot be accomplished by self-executing treaty; implementing legislation appropriating such funds is indispensable. Similarly, the constitutional mandate that 'all Bills for raising Revenue shall originate in the House of Representatives' [U.S. Const, art. I, § 7, cl. 1] appears, by reason of the restrictive language used, to prohibit the use of the treaty power to impose taxes.”). "The treaty power does not literally authorize Congress to act legislatively, for it is an Article II power authorizing the President, not Congress, 'to make Treaties.' " United States v. Lara, 541 U.S. 193, 201, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004) (quoting U.S. Const., art. II, § 2, cl. 2).

. Once we remove the Convention as a possible source of preemption, then this case is *747 no different from Munich American Reinsurance Co. v. Crawford, 141 F.3d 585 (5th Cir.1998). In Munich, the court looked to the Federal Arbitration Act as the source of federal law that conflicted with an Oklahoma law governing insurance delinquency proceedings, and found that the Oklahoma Law reverse-preempted the Federal Arbitration Act under the McCarran-Ferguson Act. Id. at 596. If the Convention Act is all that is left to preempt, it is reverse-preempted just as the FAA was in the previous case.

. Congress incorporated the substance of the treaty in the implementing Act of Congress largely by reference. See, e.g., 9 U.S.C. § 201 (“The Convention ... shall be enforced in United States courts in accordance with this chapter.’’).

. Our cases further confirm that the phrase "construed to invalidate, impair, or supersede” entails applying federal law to invalidate, impair, or supersede state law. See Miller v. Nat'l Fid. Life Ins. Co., 588 F.2d 185, 186-87 (5th Cir.1979) (“The McCarran-Ferguson Act precludes the application of federal laws if, as a result, laws of a state regulating insurance would be invalidated, impaired, or superseded.” (emphasis added)); Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 708 (5th Cir.2002) (“Appellants fail to identify any statute that would be impaired, invalidated, or superseded by the application of the FAA”) *748 (citing Miller, 588 F.2d at 187) (emphasis added); Crawford, 141 F.3d at 594 (“We must now consider whether the [federal statute] operates to ‘invalidate, supersede, or impair’ [the state statute].” (emphasis added)); accord Humana Inc. v. Forsyth, 525 U.S. 299, 307, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) (“This case ... turns on the question: Would RICO’s application to the employee beneficiaries’ claims at issue invalidate, impair, or supersede Nevada's laws governing insurance?” (emphasis added)).

. There is a vague suggestion in these passages that the court still holds to the panel’s conception of the treaty and its implementing legislation as somehow conglomerated. Because no such chimera exists in our law, it is reasonable to assume that Congress did not have it in mind when it passed the McCarranFerguson Act. However, this is irrelevant to statutory interpretation because we are to look to what Congress said, not to what Congress may or may not have had in mind.
Furthermore, any theory based on a hybridized treaty-statute loses track of the basic character of this case. It is a preemption case, and preemption requires a source of federal law capable of displacing state law. If the Convention cannot do so, and the McCarran-Ferguson Act prevents the Convention Act from doing so, then no hybrid of the two can do so.

. The court acknowledges that “the starting point for interpreting a statute is the language of the statute itself." Op. at 718 & n. 9 (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). It cites no further interpretive rules in support of its reasoning, other than citing United States v. Percheman, 32 U.S. 51, 89, 7 Pet. 51, 8 L.Ed. 604 (1833) for the proposition that "[t]he understanding of the article [of a treaty] must enter into our construction of the acts of [CJongress on the subject.” Percheman is at most relevant to interpreting the Convention Act. It has no bearing on the interpretation of the phrase "Act of Congress” as it appears in the McCarran-Ferguson Act, which is not an implementing act for a treaty. Neither the parties nor the court contends that the canon of constitutional avoidance, see Ashwander v. TVA, 297 U.S. 288, 345-46, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, L, concurring), or the canon of avoiding absurd results, see United States v. Am. Trucking Ass’ns, 310 U.S. 534, 543-44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), applies here. The unambiguous nature of Congress’s language in the McCarran-Ferguson Act likewise precludes application of the Charming Betsy canon, which favors interpretations of unclear statutes that help the United States meet its treaty obligations over those that do not. Murray v. Schooner Charming Betsy, 6. U.S. (2 Cranch) 64, 2 L.Ed. 208 (1804).

. Congress, in enacting McCarran-Ferguson, explicitly stated that "continued regulation and taxation by the several States of the business of insurance is in the public interest." 15 U.S.C. § 1011. McCarran-Ferguson was a response to a Supreme Court decision interpreting the Sherman Act to apply to the business of insurance, "thereby interfering with state regulation of insurance in ... unanticipated ways.” Barnett Bank of Marion Co., N.A. v. Nelson, 517 U.S. 25, 40, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). Congress therefore "moved quickly" to enact the statute "to restore the supremacy of the States in the realm of insurance regulation" by protecting state regulation from inadvertent Congressional interference. U.S. Dep’t of Treasury v. Fabe, 508 U.S. 491, 500, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993) (emphasis added). Recognizing this strong state interest, the Supreme Court has observed that “[o]bviously, Congress’s purpose [in enacting the statute] was broadly to give support to the existing and future state systems for regulating and taxing the business of insurance.” Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 429, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).

. We cannot hold that the treaty is self-executing because no party asks us to do that. Our en banc holdings establish that we reach only the issues properly brought to the panel and the court en banc. United States v. Brace, 145 F.3d 247, 255-61 (5th Cir.1998) (en banc) ("It bears repeating — indeed, cannot be overemphasized — that we do not address issues not presented to us.”); Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 280 n. 32 (5th Cir.2005) (en banc) ("In its en banc brief, Louisiana mentioned a relatedness challenge to § 2000d-7, but that argument was not presented to the panel, and Louisiana's en banc brief fails to develop it beyond a bare assertion. Thus, Louisiana has waived its relatedness challenge.”); Atwater v. City of Lago Vista, 195 F.3d 242, 245 n. 3 (5th Cir.1999) (en banc), aff'd, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); United States v. Johnson, 718 F.2d 1317, 1325 n. 23 (5th Cir.1983) (en banc). The Underwriters failed to properly preserve a self-execution argument at both the panel and en banc stages.
At the panel stage, the Underwriters failed to press for such a holding, mentioning the argument only in a footnote of their merits brief. Appellant’s Brief 33 n. 17; see Davis v. Maggio, 706 F.2d 568, 571 (5th Cir.1983) ("Claims not pressed on appeal are deemed abandoned.”); Miller v. Tex. Tech Univ. Health Sci. Cir., 421 F.3d 342, 348-49 (5th Cir.2005) (en banc) (taking an en banc brief's "bare assertion” as forfeiture); F.D.I.C. v. Mijalis, 15 F.3d 1314, 1326-27 (5th Cir.1994) (“intimat[ing]” is not "pressing]”); see also Blumberg v. HCA Mgmt. Co., 848 F.2d 642, *752 646 (5th Cir.1988) (“[W]e have repeatedly held that we will not consider alleged errors raised only [in the reply brief].”). Indeed, as the court today notes, the Underwriters’ briefs addressed the self-execution argument without "any depth.” Op. at 721. And of course, whether the now-vacated panel opinion addressed the argument is of no consequence to the court's determination at this stage. See Brace, 145 F.3d at 256.
At the en banc stage, the Underwriters explicitly waived their self-execution argument. The court recognizes that "[tjhe Underwriters addressed whether the Convention is self-executing only in briefs to the panel." Op. at 721 (emphasis added). But more importantly, the Underwriters’ en banc reply brief actually disclaims any desire to have the court hold that the treaty is self-executing:
The question before the Court is not whether the Convention is self-executing or what preemptive effect, if any, an unimplemented non-self-executing treaty would have on a conflicting state law. The question is what preemptive effect a later-in-time, implemented treaty has on conflicting state law.
Appellant’s En Banc Reply Brief 6-7. If we take the concurrence’s suggestion and look to "the section heading preceding that language,” Concurrence at 733 n. 2, the inference is no different, for there again the Underwriters present the treaty as non-self-executing: "LSAT Avoids Answering the Question Posed by the Panel — Why Should an Implemented Non-Self-Executing Treaty Be Treated Any Differently Than a Self-Executing Treaty?” Appellant’s En Banc Reply Brief 6.
The concurrence urges us to look at LSAT’s en banc brief to determine whether or not the Underwriters presented the issue. Concurrence at 732-33 n. 2. Rather than look to LSAT’s brief for the Underwriters’ argument, we could have just asked the Underwriters what they had briefed. And, in fact, we did:
Q: That the clause is self-executing, section three, is that somewhere in your brief?
A: In the en banc briefs, we did not go into that issue, Your Honor, no we did not.
Recording of Oral Argument, Safety Nat’l Cas. Corp. v. Certain Underwriters at Lloyd’s London, 558 F.3d 599 (5th Cir.2009) (en banc), http://www.ca5.uscourts.gov/OralArg Recording s/06/06-30262_5-21-2009.wma.
Accordingly, we cannot reverse the trial court by holding that the treaty is self-executing because the Underwriters first forfeited and then waived the argument, and "it is not for us to decide which issues should be presented, or to otherwise try the case for the parties,” Brace, 145 F.3d at 256.